*421 OPINION.
Geeen:
The issue presented in this appeal is whether the petitioners, the sole and equal partners of William Broadhead & Sons, sustained a loss in 1919 of the cost to the partnership of its investment in the stock of the Chautauqua Traction Co. The stock was acquired prior to March 1, 1913, at a cost of $289,885.20. Its fair market value on March 1,1913, was $325,223.31.
The section of the statute under which the loss is claimed is section 214 of the Revenue Act of 1918, which provides in part as follows:
Sec. 214. (a) That in computing net income there shall be allowed as deductions:
$ * $ * 4* $ #
(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *
We think the facts as set out in the findings clearly show that the stock in question became worthless during 1919. Its cost is, there *422 fore, a proper deduction from the gross income of the partnership for that year. Appeal of Remington Typewriter Co., 4 B. T. A. 880; Henry M. Jones v. Commissioner, 4 B. T. A. 1286; J. J. Melick v. Commissioner, 6 B. T. A. 70; Joslyn Manufacturing & Supply Co. v. Commissioner, 6 B. T. A. 749.
The respondent vigorously contends that if any loss can be held to have been sustained, it was not sustained until 1926, at which time the Chautauqua Traction Co. ceased operating its road and went into liquidation. In our opinion there are many reasons why the loss was sustained in 1919.
The company was fairly prosperous from its beginning in 1908 until the close of 1916. Beginning in 1917 it sustained losses during the remainder of its existence. During 1919, its deficit increased to $590,680.54, or $90,630.54 in excess of its outstanding capital stock. The company was then insolvent. The stockholders’ equity was entirely extinguished. Had it salvaged its property in that year the bondholders would not have realized more than 33% cents on the dollar, leaving nothing for the general creditors or the stockholders. We do not say that this fact alone would warrant a finding of the worthlessness of the stock in 1919. The company continued to operate and it is not an unusual thing for businesses to survive a temporary depression. The facts, however, in the instant case clearly show that by 1919 it became definitely known that the Chautauqua Traction Co. could not possibly survive. The increasing number of automobiles, together with the improved highways which ran parallel to the traction company’s line, resulted in reducing, with the exception of 1917, the number of passengers carried. In 1919 it became apparent that this condition would continue. The company, in 1918, took steps to increase its passenger rates but after a year’s trial this proved to be no cure for its financial ills. The decision of the New York Public Service Commission rendered on November 25, 1919, was reasonably construed by the petitioners as a direction that they should charge off and reduce their investments in the traction company. The general superintendent testified at the hearing that by 1919 he had exhausted all ideas of how to improve conditions, and said “ I could not figure out where there could be a return earned on the investment.” Officers of adjoining roads made investigations of the traction company’s affairs in 1919 with a view of possibly consolidating, but abandoned all such considerations as, in their opinion, the traction company was so hopelessly insolvent that its property was not worth the bonds outstanding against it.
The Commissioner cites the case of the Appeal of E. O. Walgren, 4 B. T. A. 1066, as being on all fours with the facts in the instant case. In that cáse, the evidence showed that during the year in which *423 the loss on the worthlessness of stock was claimed, the identical stock was traded on the market at 15 cents on the dollar. It had not yet become worthless. We have repeatedly held that mere shrinkage in securities does not constitute a basis for a deduction on account of losses sustained. W. P. Davis v. Commissioner, 6 B. T. A. 1267. That is not the situation here.
In Joslyn Manufacturing & Supply Co., supra, the petitioner claimed that certain stock which it owned in the Southern Electric Supply Co. became worthless in 1920 although the latter company continued to operate until July, 1921. The opinion reads in part as follows:
Prom tlie foregoing facts it is apparent that at the close of the year 1920 the financial and commercial position of the Southern Electric Supply Co. was valueless and hopeless. * * * Its financial statements showed that it was insolvent and a verification of this later disclosed that there was not during the year 1920 anything for the stockholders and no hope that anything would be left for them after liquidation. Not only were the officers bona, fide convinced of the worthlessness of the venture, but the true condition of the business fully substantiated their judgment. The only reason why the petitioner continued any relations with the Southern Electric Supply Co. was its desire to bear its full share of the burdens of the mismanagement and misfortune of the company.
The situation of the petitioners in this proceeding is unusual in that they occupy the dual position of stockholders and bondholders, and in that the bonds held by them were pledged as collateral security for loans made to secure funds necessary for the operation of their other business activities. These bonds served as the keystone of the petitioner’s credit and the desire of the petitioners to preserve and maintain their value as collateral, and this desire alone prevented the complete abandonment of the operation of the traction company in 1919, with the consequent recovery by way of salvage of an amount far from sufficient to liquidate the bonds. In 1919 the petitioners recognized the worthlessness of their stock and the total inadequacy of the assets to satisfy the bonded indebtedness and were ready and willing then and there to take their losses, not only upon the stock but upon the bonds, and refrained from doing so only because of the effect that it would have upon their credit standing as the result of the diminution in value of the bonds pledged as collateral.
As was said in the Appeal of Remington Typewriter Co., supra—
The fact tbat the shell of a worthless corporation continues in business is no bar to the deduction of an investment in that corporation’s stock when all facts clearly indicate the stock to be worthless.
We are satisfied from all of the evidence that the stock of the Chautauqua Traction. Co. became' worthless in 1919. The investment in such stock was therefore a loss sustained during 1919, which loss was *424 not compensated for by insurance or otherwise. It was incurred in a transaction entered into for profit. The Commissioner was therefore in error in refusing to allow the cost of such stock as a deduction in the partnership’s return.
Judgment will he entered on 15 days’ notice, under Rule 50.